## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION, SIERRA CLUB, and ENVIRONMENTAL DEFENSE FUND | ) ) ) ) |
| Petitioners, | ) ) |
| v. | ) ) )     Case No. 20-60929 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ANDREW WHEELER, Administrator, United States Environmental Protection Agency, | ) ) ) ) ) ) |
| Respondents. | ) |

## MOTION FOR LEAVE TO INTERVENE BY LUMINANT GENERATION COMPANY LLC, BIG BROWN POWER COMPANY LLC, LUMINANT MINING COMPANY LLC, AND COLETO CREEK POWER, LLC IN SUPPORT OF RESPONDENTS

**Stephanie Z. Moore**
Executive Vice President & General
Counsel
**Daniel J. Kelly**
Vice President & Associate General
Counsel
**David W. Mitchell**
Senior Counsel, Environmental
VISTRA CORP.
6555 Sierra Drive
Irving, Texas 75039

**P. Stephen Gidiere III**
**Julia B. Barber**
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

*Counsel for Movant-Intervenors Luminant
Generation Company LLC, Big Brown
Power Company LLC, Luminant Mining
Company LLC, and Coleto Creek Power,
LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Balch & Bingham LLP (Counsel for Movant-Intervenors)

- Barber, Julia B. (Counsel for Movant-Intervenors)

- Barr, William, Attorney General, United States Department of Justice (Counsel for Respondents)

- Big Brown Power Company LLC (Movant-Intervenor)

- Clark, Jeffrey Bossert, Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice (Counsel for Respondents)

- Coleto Creek Power, LLC (Movant-Intervenor)

- Dupre, Phillip R. (Counsel for Respondents)

- Environmental Defense Fund (Petitioner)

- Gidiere, P. Stephen III (Counsel for Movant-Intervenors)

- Kelly, Daniel J. (Counsel for Movant-Intervenors and Vice President & Associate General Counsel for Vistra Corp.)

- Leopold, Matthew Z. (General Counsel for United States Environmental Protection Agency)

- Luminant Generation Company LLC (Movant-Intervenor)

- Luminant Mining Company LLC (Movant-Intervenor)

- McPhedran, Charles (Counsel for National Parks Conservation Association, Sierra Club, and Environmental Defense Fund)

- McQueen, Ken (Regional Administrator for Respondent United States Environmental Protection Agency)

- Mitchell, David W. (Counsel for Movant-Intervenors and Senior Counsel, Environmental for Vistra Corp.)

- Moore, Stephanie Zapata (Counsel for Movant-Intervenors and Executive Vice President & General Counsel for Vistra Corp.)

- National Parks Conservation Association (Petitioner)

- Sierra Club (Petitioner)

- Smith, Joshua (Counsel for Sierra Club)

- Soules, Michael (Counsel for National Parks Conservation Association, Sierra Club, and Environmental Defense Fund)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Movant-Intervenors)

- Vistra Corp. (Parent company of Movant-Intervenors)

- Vistra Intermediate Company LLC (Parent company of Movant-Intervenors)

- Vistra Operations Company LLC (Parent company of Movant-Intervenors)

- Wheeler, Andrew, Administrator, United States Environmental Protection Agency (Respondent)

Respectfully submitted,

s/ P. Stephen Gidiere III
*Counsel for Movant-Intervenors*

# MOTION FOR LEAVE TO INTERVENE

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Circuit Rules 15.5 and 27, Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, and Coleto Creek Power, LLC (collectively, "Luminant") respectfully move to intervene in support of Respondents in the challenge filed by National Parks Conservation Association, Sierra Club, and Environmental Defense Fund[1] (collectively, "Environmental Petitioners") to the Environmental Protection Agency's ("EPA") final rule entitled *Promulgation of Air Quality Implementation Plans; State of Texas; Regional Haze and Interstate Visibility Transport Federal Implementation Plan.* 85 Fed. Reg. 49,170 (Aug. 12, 2020) ("2020 Texas BART Rule").[2] The 2020 Texas BART Rule makes revisions to an existing emission trading program for sulfur dioxide ($SO_2$) emissions from certain electric generating units ("EGUs") in Texas, including ones operated by Luminant, and thus Luminant would be directly impacted were Environmental Petitioners to prevail in their challenge to those revisions. Luminant was previously granted intervention in the related challenge filed by Environmental Petitioners to the original promulgation of this trading program, which remains pending in this Court. *See Nat'l Parks Conservation Ass'n v. EPA*, No. 17-60828 (5th Cir.).

---

[1] The petition for review was filed in the Fifth Circuit on October 9, 2020.

[2] Luminant opposes Environmental Petitioners' motion to hold this case in abeyance, Doc. 00515623674, and intends to file a response in the time provided by the Court's rules.

Pursuant to Fifth Circuit Rule 27.4, the undersigned counsel has conferred with the counsel for the parties regarding this motion. No party has stated they oppose the motion. Counsel for Respondents has stated that Respondents take no position on the motion. Counsel for Environmental Petitioners has stated that Environmental Petitioners take no position on the motion but reserve the right to file a response.

## INTRODUCTION

This case, along with pending Case No. 17-60828, arise under the federal Clean Air Act ("CAA"). The 2020 Texas BART Rule challenged by Environmental Petitioners in the present case involves limited revisions to the terms of the $SO_2$ emissions trading program that EPA established in 2017, 82 Fed. Reg. 48,324 (Oct. 17, 2017) ("2017 Texas BART FIP"). Specifically, in the 2017 Texas BART FIP, EPA: **1)** approved Texas's determination that certain Texas EGUs are not subject to the Best Available Retrofit Technology ("BART") requirements for particulate matter (PM) emissions; **2)** promulgated a federal implementation plan ("FIP") to satisfy BART for $SO_2$ emissions in the form of an *intra*state emissions trading program that regulates $SO_2$ emissions from certain EGUs within the state; and **3)** promulgated a FIP to satisfy BART for nitrogen oxides ($NO_X$) emissions based on Texas's participation in the Cross-State Air Pollution Rule's ("CSAPR") ozone-season $NO_X$ trading program. The 2020 Texas BART Rule declines Environmental Petitioners' request that EPA rescind the $SO_2$ trading program and affirms that program (that has been in place and operating

2

since January 1, 2019) for the same eighteen Texas power plants at issue in that rule with a few, limited revisions to the trading rules. 85 Fed. Reg. at 49,216.

Luminant is directly impacted by all three aspects of the 2017 Texas BART FIP, as revised by the 2020 Texas BART Rule. Luminant's EGUs are among those that the Texas Commission on Environmental Quality ("TCEQ") determined are not subject to BART for PM; Luminant operates multiple units that satisfy BART for $NO_X$ through participation in CSAPR's ozone-season $NO_X$ program; and Luminant operates multiple EGUs that have been operating under the $SO_2$ trading program since January 1, 2019, and/or hold allowances for that program. Given that Luminant is directly regulated by the 2017 Texas BART FIP, as revised and affirmed by EPA in the 2020 Texas BART Rule, Luminant's intervention on behalf of Respondents is warranted.

## BACKGROUND

## I.    Statutory and Regulatory Background of the Regional Haze Program

The regional haze program was added by Congress to the CAA in 1977 to address visibility in national parks and other federal "class I areas."[3] 42 U.S.C. § 7491. The provision "declare[d] as a national goal the prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas which impairment results from manmade air pollution." *Id.* § 7491(a)(1).

---

[3] "Federal class I areas" include national wilderness areas and certain national memorial parks and national parks. 42 U.S.C. § 7472(a).

Under the amendments, EPA was required to "promulgate regulations to assure [] reasonable progress toward meeting the national goal" of visibility. *Id.* § 7491(a)(4). But implementation—including the determinations of what constitutes "reasonable progress" and what specific measures were needed to achieve it—was delegated to the states. *See Texas v. EPA*, 829 F.3d 405, 411-13 (5th Cir. 2016) (discussing respective roles of EPA and the states under regional haze program). The statute provides that state implementation plans ("SIPs") must contain "emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress toward meeting the national goal . . . ." 42 U.S.C. § 7491(b)(2). Specifically, a state's regional haze SIP must contain three elements: (1) reasonable progress goals for Class I areas in the state; (2) a long-term strategy to ensure reasonable progress; and (3) implementation of BART for certain stationary sources. 40 C.F.R. § 51.308(d), (e). The 2020 Texas BART Rule at issue here addresses the BART requirement for Texas EGUs.

## II.    The BART Requirement

The BART provisions of the regional haze program—which are at issue in the 2020 Texas BART Rule—require states to evaluate emissions from certain EGUs and other specific categories of stationary sources that were built between 1962 and 1977.[4] Despite its name, BART is not necessarily a particular type of technology that is installed

---

[4] The regulations specify that the eligible facilities are those that were "not in operation prior to August 7, 1962, and w[ere] in existence on August 7, 1977[.]" 40 C.F.R. § 51.301.

at a particular source. The BART regulations authorize a state (or EPA in the case of a FIP) "to implement or require participation in an emissions trading program or other alternative measure rather than to require sources subject to BART to install, operate, and maintain BART." 40 C.F.R. § 51.308(e)(2). The BART alternative can take the form of an emissions trading program or some other alternative measure and "must achieve greater reasonable progress than would be achieved through the installation and operation of BART." *Id.*; *see also id.* § 51.308(e)(2)(i), (iii)-(iv), (vi) (elements of a BART alternative).

EPA's regulations also allow the state to rely on an already-existing federal interstate trading program to satisfy BART. EPA's regulations provide that "[a] State whose sources are subject to a trading program established . . . in accordance with a federal implementation plan set forth in § 52.38 or § 52.39 . . . need not require BART-eligible fossil fuel-fired steam electric plants in the State to install, operate, and maintain BART for the pollutant covered by such trading program in the State." *Id.* § 51.308(e)(4). EPA has determined that the Clean Air Interstate Rule ("CAIR"), its replacement, CSAPR, and the CSAPR Update Rule, which are all federal trading programs that limit $SO_2$ and $NO_X$ emissions from EGUs, are "better-than-BART" and operate as BART alternatives for EGUs in states subject to those programs. 70 Fed. Reg. 39,104 (July 6, 2005); 77 Fed. Reg. 33,642 (June 7, 2012); 82 Fed. Reg. 45,481 (Sept. 29, 2017).

III.    **Texas's Regional Haze SIP**

Texas began developing its regional haze SIP in 1999 to address the two Class I areas located in Texas as well as its contribution to visibility conditions at Class I areas outside of Texas. The federal Class I areas located in Texas are Big Bend National Park, which borders Mexico along the Rio Grande, and Guadalupe Mountains National Park, which borders New Mexico. *See Texas*, 829 F.3d at 413 (discussing these two areas). Based on a multi-year analysis and consultation, Texas's regional haze SIP was adopted by TCEQ on February 25, 2009. The SIP addresses all three core elements of the regional haze program: (1) reasonable progress goals, (2) a long-term strategy, and (3) BART.

As to BART for EGUs, Texas conducted a screening analysis that determined that "no Texas sources remained subject to BART" for PM emissions. *See* TCEQ, Revisions to the State Implementation Plan (SIP) Concerning Regional Haze 9-1 to 9-2, 9-17 (Feb. 25, 2009). In regard to BART for $SO_2$ and $NO_X$, Texas concluded that "participation in CAIR is equivalent to BART" for EGUs. *See id.* at 9-1.

IV.    **EPA's Action on Texas's Regional Haze SIP**

EPA published the 2017 Texas BART FIP at issue in Case No. 17-60828 on October 17, 2017. The 2017 Texas BART FIP addressed the portions of Texas's 2009 Regional Haze SIP that involved the BART requirements for EGUs in Texas. 82 Fed. Reg. at 48,324. Specifically, the 2017 Texas BART FIP approved Texas's SIP as to BART for PM and issued a FIP that relied on (1) an *intra*state emissions trading program

to satisfy BART for $SO_2$ and (2) Texas's continued participation in CSAPR's ozone-season $NO_X$ program to satisfy BART for $NO_X$.  *Id.*[5]  The emissions trading program for $SO_2$ allocated emission allowances to 18 power plants in Texas at levels EPA determined were "better than BART."  *Id.* at 48,327, 48,329.  This Texas-only trading program began on January 1, 2019, and has been in effect since that time.  *Id.* at 48,335.  Under this trading program, the units at each plant receive an annual $SO_2$ allowance allocation that may be traded, but they are not permitted to trade allowances with EGUs outside of Texas.  *Id.* at 48,329.  EPA concluded in the 2017 Texas BART FIP that the "BART alternative is justified 'based on the clear weight of the evidence' that the alternative achieves greater reasonable progress than would be achieved through BART."  *Id.* at 48,327 (quoting 40 C.F.R. § 51.308(e)(2)(i)(E)).

On December 18, 2017, Environmental Petitioners first filed their challenge to the 2017 Texas BART FIP only in this Court.  *See* Petition for Review, *Nat'l Parks Conservation Ass'n v. EPA*, No. 17-60828 (5th Cir. Dec. 18, 2017).  Additionally, following publication of the 2017 Texas BART FIP, the Environmental Petitioners petitioned EPA for administrative reconsideration of the rule.  85 Fed. Reg. at 49,174.

---

[5] Other aspects of Texas's regional haze plan (including the reasonable progress and long-term strategy components) are the subject of a related pending challenge in this Court.  *See Texas v. EPA*, No. 16-60118 (5th Cir.).  This Court stayed EPA's action on the other components of Texas's regional haze plan on July 15, 2016.  *See Texas*, 829 F.3d at 435.  That other rule has been remanded to EPA for reconsideration, and the Court has retained jurisdiction.  Order at 2, *Texas v. EPA*, No. 16-60118 (5th Cir. Mar. 22, 2017).

In response to that petition, EPA determined "certain aspects of the [rule] could benefit from further public comment." *Id.* Therefore, this Court held Case No. 17-60828 in abeyance pending EPA's action on reconsideration. Order at 1, *Nat'l Parks Conservation Ass'n v. EPA*, No. 17-60828 (5th Cir. Mar. 6, 2018).[6]

On August 27, 2018, EPA proposed to affirm the 2017 Texas BART FIP while seeking comments on certain aspects of that action. 85 Fed. Reg. at 49,174. In response to comments it received on the August 27, 2018 proposal, EPA issued a supplemental proposal, proposing certain limited revisions to the trading program. *Id.* The rule at issue here is EPA's final affirmance of the 2017 Texas BART FIP with certain, limited revisions. *Id.* at 49,170.

## V.    Luminant's Interest in the 2020 Texas BART Rule

Luminant is the largest generator of electric power in the Texas market, with a dozen EGUs in its affiliated ownership group under the $SO_2$ trading program,[7] and thus has a substantial interest in the 2020 Texas BART Rule. These EGUs are among those that have been operating under the $SO_2$ trading program since January 1, 2019, which

---

[6] That reconsideration process is now complete. Accordingly, Luminant and other Respondent-Intervenors, with concurrence from EPA, have filed a motion to: 1) lift the abeyance in Case No. 17-60828; 2) consolidate Case No. 17-60828 and this case, Case No. 20-60929; and 3) confirm that venue for the consolidated cases lies in this Court. *See* Motion at 1, *Nat'l Parks Conservation Ass'n v. EPA*, No. 17-60828 (5th Cir. Oct. 21, 2020). That motion remains pending before the Court.

[7] *See* 40 C.F.R. § 97.911(a)(1), tbl.1.

the 2020 Texas BART Rule revises, and are among those impacted by the revisions to the trading program in the 2020 Texas BART Rule challenged in this case. Additionally, many of Luminant's units satisfy BART for $NO_X$ through participation in CSAPR's ozone-season $NO_X$ program and also are among those that TCEQ determined are not subject to BART for PM, which were both affirmed in the 2020 Texas BART Rule. Therefore, Luminant is affected by the 2020 Texas BART Rule.

## ARGUMENT

The Court should grant Luminant's motion for leave to intervene in support of Respondents because Luminant meets this Court's standard for intervention. Federal Rule of Appellate Procedure 15 does not establish a specific legal standard for intervention, but this Court "has identified two considerations" that are to be considered in assessing a motion to intervene in a case involving a petition for review: (1) "the statutory design of the act" and (2) "the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24." *Texas v. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985) (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers v. Scofield*, 382 U.S. 205 (1965)). Luminant's motion satisfies both considerations.

## I.    Luminant Is Regulated under the Texas $SO_2$ Trading Program and Impacted by the 2020 Texas BART Rule

In evaluating a motion to intervene, the Court first considers "the statutory design" of the CAA. *Id.* Here, Luminant owns and operates power plants that are directly regulated under the regional haze provisions of the CAA through the BART

alternative revised by the 2020 Texas BART Rule. The 2020 Texas BART Rule provides limited revisions to the *intra*state emissions trading program that was established in the 2017 BART FIP that restricts $SO_2$ emissions at Luminant's EGUs. Moreover, as affirmed in the 2020 Texas BART Rule, Luminant's EGUs are compliant with BART for $NO_X$ through participation in CSAPR's ozone-season $NO_X$ program. And the 2020 Texas BART Rule affirms EPA's prior action that approved TCEQ's determination that Luminant's units are not subject to BART for PM emissions. Luminant's intervention in this action is therefore warranted due to the direct regulation of its EGUs pursuant to the 2017 Texas BART FIP, as revised by the 2020 Texas BART Rule, and the CAA.

Additionally, Luminant moved to intervene before this Court in Environmental Petitioners' original challenge to the 2017 Texas BART FIP, and this Court granted that intervention. Order at 1, *Nat'l Parks Conservation Ass'n v. EPA*, No. 17-60828 (Jan. 12, 2018). Further, Luminant has availed itself of the administrative process by submitting comments to EPA on the proposals that preceded both the 2017 Texas BART FIP and the 2020 Texas BART Rule.[8] Thus, Luminant has a demonstrated interest in the 2020 Texas BART Rule.

---

[8] *See* Comments of Luminant, Dock. ID EPA-R06-OAR-2014-0754-0061 (Apr. 20, 2015); Comments of Luminant, Dock. ID EPA-R06-OAR-2016-0611-0084 (May 5, 2017); Comments of Vistra, Dock. ID EPA-R06-OAR-2016-0611-0162 (Oct. 26, 2018); Comments of Vistra, Dock. ID EPA-R06-OAR-2016-0611-0186 (Jan. 13, 2020).

## II.    Luminant Satisfies the Requirements for Intervention as of Right

The requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) are: (1) the application is timely; (2) the applicant claims an interest relating to the subject of the action; (3) disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) existing parties may not adequately represent the applicant's interest.  Fed. R. Civ. P. 24(a)(2); *see John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).  Luminant satisfies each prong of this test.

### A.    The Motion to Intervene Is Timely

Luminant's motion meets the standard for timeliness under Federal Rule of Procedure 15 and Fifth Circuit Rule 15.5.  Environmental Petitioners' petition for review was filed in the Fifth Circuit on October 9, 2020.  Under Fifth Circuit Rule 15.5, a motion to intervene under Federal Rule of Appellate Procedure 15(d) "should be filed promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor." Because no due date has been set by the Court for Respondent EPA's brief, Luminant's motion is timely under Fifth Circuit Rule 15.5.  And Luminant's motion to intervene is also timely under Federal Rule of Appellate Procedure 15(d).[9]  Fed. R. App. P. 15(d)

---

[9] Environmental Petitioners filed their petition for review on October 9, 2020; therefore, the 30-day time period ends on Sunday, November 8, 2020.  Pursuant to Federal Rule of Appellate Procedure 26(a)(1)(C), the 30-day period continues to run

("The motion—or other notice of intervention authorized by statute—must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention.").

### B.    Luminant Has Protectable Interests in the 2020 Texas BART Rule that Would Be Impaired if Environmental Petitioners Prevail

Luminant has substantial reliance interests in the $SO_2$ trading program, which was originally promulgated by the 2017 Texas BART FIP and subsequently revised by the 2020 Texas BART Rule, that will be impaired if the 2020 Texas BART Rule is not upheld. As this Court has noted, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (internal quotations omitted).

Here, Luminant has an interest in protecting the continued operation of its generating facilities, ensuring the economic viability of those facilities without undue burden, and preserving flexibility of compliance options under the CAA. When a final agency action or other regulatory decision is challenged, the members of the regulated industry that are directly affected by that government action have a significant, protectable interest that supports intervention. *See, e.g.*, *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566-68 (5th Cir. 2016) (finding that an

until the end of the next day that is not a Saturday, Sunday, or legal holiday. Here, that is Monday, November 9, 2020.

association representing holders of package store permits has "a legally protectable interest in the regulatory scheme"). If Environmental Petitioners are successful and EPA is required to further revise the $SO_2$ trading program, it would create regulatory uncertainty and Luminant could eventually be subject to revised trading rules that decrease operational flexibility and subject Luminant to significantly higher compliance costs.[10] Moreover, one of the provisions of the $SO_2$ trading program revised by the 2020 Texas BART Rule specifically relates only to one of Luminant's facilities, Coleto Creek. *See* 85 Fed. Reg. at 49,213. Therefore, the outcome of this litigation will directly affect Luminant's facilities and could significantly increase Luminant's cost of compliance and restrict its operations. Because Luminant has direct legal and economic interests that will be impaired if the 2020 Texas BART Rule is modified, intervention on behalf of Respondents is warranted.

## C.    No Existing Party Adequately Represents Luminant's Interests

Luminant's interests will not be adequately represented by any of the existing parties to this case. The burden of showing that an intervenor's interests will not be adequately represented by existing parties is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). This Court has held that the burden "is satisfied if the

---

[10] *See, e.g.*, *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 37-38 (D.C. Cir. 2012), *rev'd and remanded on other grounds by EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489 (2014) (recognizing the importance of protecting accumulated reliance interests on emission trading program notwithstanding that program would have to be replaced by a new rule in the future).

applicant shows that representation of his interest '*may be*' inadequate . . . ." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (internal quotations omitted) (emphasis added). In this regard, representation by existing parties may be inadequate even if the putative intervenor and an existing party "agree[] on the merits of the substantive issues to be litigated." *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir. 2002).

Applying these principles, this Court has recognized that governmental representation of private intervenors may be inadequate because the "broad public interest" that governments represent extend beyond those relevant to a private entity. *See John Doe No. 1*, 256 F.3d at 381 (citing *Espy*, 18 F.3d at 1208). That is the case here. Respondents' interest in the 2020 Texas BART Rule arises from its governmental obligations under the CAA. This is different from Luminant's interest, which arises from the regulatory obligations imposed on its commercial operations as a result of the 2020 Texas BART Rule. Thus, while Respondents and Luminant may seek the same result in the present action (*i.e.*, to uphold the approval of Texas's SIP and the BART alternatives), their objectives are distinct. Because Respondents' interests are in the realm of *policymaking* while Luminant's interests are in the realm of *compliance*, Respondents are not in the position to adequately represent Luminant's specific arguments and interests.

Likewise, Environmental Petitioners do not represent Luminant's interests. Environmental Petitioners seek to vacate the 2017 Texas BART FIP and 2020 Texas BART Rule, while Luminant seeks to defend them. Because Environmental Petitioners

are directly opposed to Luminant's interest, there is no reason or expectation for them to raise arguments in representation of Luminant's position. Thus, no party in the present litigation will adequately represent Luminant, making intervention appropriate.

## III. In the Alternative, Luminant Satisfies the Standard for Permissive Intervention

Luminant should be entitled to intervene as a matter of right, but, in the alternative, this Court should allow for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *See also Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) ("The decision to permit intervention . . . requires a threshold determination that the [intervenor]'s claim or defense and the main action have a question of law or fact in common." (internal quotations omitted)).

As previously demonstrated, Luminant timely filed its motion for leave to intervene. Additionally, Luminant has an interest that will be impaired if the 2020 Texas BART Rule is modified. To protect their interests, Luminant, along with Respondents, will argue that EPA acted lawfully in affirming the 2017 Texas BART FIP and the revisions to the $SO_2$ trading program in the 2020 Texas BART Rule are appropriate. In doing so, Luminant and Respondents will likely make many similar legal arguments, such as that EPA correctly found that the revised $SO_2$ trading program satisfies the

clear weight of evidence standard under 40 C.F.R. § 51.308(e)(2)(i)(E). Therefore, a

common question of law exists and permissive intervention should be granted.

## CONCLUSION

For the foregoing reasons, Luminant respectfully asks this Court to grant their

motion for leave to intervene in support of Respondents.


Dated: November 6, 2020                    Respectfully submitted,


                                           s/ P. Stephen Gidiere III
                                           P. Stephen Gidiere III
                                           Julia B. Barber
                                           BALCH & BINGHAM LLP
                                           1901 6th Ave. N., Ste. 1500
                                           Birmingham, Alabama 35203
                                           205-251-8100
                                           sgidiere@balch.com

                                           Stephanie Z. Moore
                                           Executive Vice President & General Counsel
                                           Daniel J. Kelly
                                           Vice President & Associate General Counsel
                                           David W. Mitchell
                                           Senior Counsel, Environmental
                                           VISTRA CORP.
                                           6555 Sierra Drive
                                           Irving, Texas 75039

                                           *Counsel for Movant-Intervenors Luminant
                                           Generation Company LLC, Big Brown Power
                                           Company LLC, Luminant Mining Company LLC,
                                           and Coleto Creek Power, LLC*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel states that this motion complies with Fed. R. App. P.
27(d)(2)(A) because it contains 3,905 words, excluding the items allowed to be excluded
pursuant to Fed. R. App. P. 32(f), as counted by a word processing system and,
therefore, is within the word limit. This motion also complies with typeface
requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a
proportionally spaced typeface in 14-point Garamond font.

Dated: November 6, 2020

s/ P. Stephen Gidiere III
*Counsel for Movant-Intervenor*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 6th day of November, 2020.

s/ P. Stephen Gidiere III

*Counsel for Movant-Intervenors*